Jackson v. State.

## CONSTITUTIONAL LAW—FISH AND GAME.

[Sandusky (6th) Circuit Court, October 13, 1910.]

Parker, Wildman and Kinkade, JJ.

### *RICHARD JACKSON V. STATE.

1. GEN. CODE 1453, AUTHORIZING COMMISSIONERS OF FISH AND GAME TO ISSUE PERMITS TO CATCH CARP IN A NET, IS CONSTITUTIONAL.

> issue permits to catch carp in a net is constitutional, but such commissioners have no power to place any limits on the place where such permit shall be used other than that provided in said section, and any attempted limitation will be disregarded.

2. WATERS OF A CREEK WHICH FLOW INTO LAKE ERIE AND ARE ON A LEVEL WITH THE LAKE ARE WITHIN MEANING OF GEN. CODE 1453.

> A place in a creek which flows into Sandusky Bay the waters of which are on a level with the bay and Lake Erie and subject to rise and fall under the same influences as affect the surface of the lake, is a water within the meaning of Gen. Code 1453 authorizing the catching of carp in nets therein when permission to do so has been obtained from the commissioners of fish and game.

[Syllabus approved by the court.]

ERROR to Sandusky common pleas court.

*George A. True* and *Ruel H. Crawford,* for plaintiff in error.

*U. G. Denman,* Atty. Gen., and *E. H. Froehlich,* for defendant in error.

Cited and commented upon the following authorities: *Bodi v. Shooting Club,* 57 Ohio St. 226 [48 N. E. Rep. 944]; modifying, *Winous Point Shooting Club* v. *Bodi,* 10 Circ. Dec. 544 (20 R. 637); *French* v. *Shirley,* 9 Dec. 181 (7 N. P. 26); Angell, Tide Waters (2 ed.) p. 73; *Peyroux* v. *Howard,* 32 U. S. (7 Pet.) 324 [8 L. Ed. 701]; *Sloan* v. *Biemiller,* 34 Ohio St. 492; *Winous Point Shooting Club* v. *Caspersen,* 66 Ohio St. 687, affirming, *Winous Point Shooting Club* v. *Caspersen,* 14 O. F. D. 319 [193 U. S. 189].

### WILDMAN, J.

This case is an exceedingly interesting one, in which there is a temptation to render a somewhat more elaborate opinion,

---

*Affirmed, no op., *State* v. *Jackson,* 84 O. S. 498.

in stating the conclusions which we have reached, than our time will allow.

Mr. Jackson was convicted before a magistrate of a violation of Sec. 9 of the Fish and Game law, which has now been embodied in Gen. Code 1426. It is the section which prohibits fishing with certain nets and in a certain manner in the inland fishing district of this state. It was charged in the first count of the affidavit, in substance, "that he did knowingly, wilfully and unlawfully draw, set, place, locate and maintain a certain seine in the Inland Fishing District of said state, to wit, in the waters of Mud Creek."

There is a second count in the affidavit, but inasmuch as the magistrate found him not guilty as charged in that, it is not necessary to read or discuss it.

The defendant concedes that he had spread his net in the waters of Mud Creek, so-called, but he says that Mud Creek is an estuary, inlet, creek or marsh along the border or near the border of Lake Erie; that he was up the stream, if we may call it such, some little distance from Horseshoe Island. His claim is that Horseshoe Island is at the mouth of the creek; that the creek substantially ends at Horseshoe Island. He says he was fishing for carp by virtue of his rights under the law, fortified by a permit from the commissioners of Fish and Game of this state.

The statute providing for such a permit is found in Gen. Code 1453. After various provisions prohibiting in some instances, the fishing in certain waters, and in others restricting the manner in which fishing shall be done, we have this provision in the section so numbered:

"German carp may be taken or caught at any time in the bays, marshes, estuaries or inlets bordering upon, flowing into or in any manner connected with Lake Erie, with any seine, having meshes not less than four inches, stretched mesh. Other nets or devices may be used if authorized by the commissioners of fish and game. Written permission to catch carp in such waters shall be granted to any person making application to the commissioners for such privilege who satisfies the commissioners that he will not violate a law for the protection of fish. Such

Jackson v. State.

permission may be revoked by the commissioners upon conviction of the holder thereof for taking fish contrary to law.''

Under the former statute providing for permits from the fish and game commission to fish for carp, a question was raised before me, at that time on the common pleas bench, as to the constitutionality of the enactment; and construing the act as it then stood, as giving an arbitrary power to the fish and game commissioners to grant permits according to their own caprice, without any qualification as to the grounds upon which such permits should be issued, I deemed and held the law unconstitutional. Since then the statute has taken its present form, and there is now this qualification to the granting of the permits; that the applicant shall satisfy the commissioners that he will not violate the law. And where he has so satisfied them the granting of the permit is now made a mandatory duty of the fish and game commissioners.

The first question to which we are invited is whether the amendment to the legislation has cured it of the invalidity of the original act; and we are inclined to think that it has. We think that it is now more like enactments providing for licenses for various occupations or acts, and that it is no longer left to the capricious will of the commissioners, so that they may no longer exercise favoritism, but in all cases, the act being universal in its operation, any person who can satisfy the commissioners that he will not violate the law is entitled to the permit which the statute specifies.

It then becomes an interesting question, assuming the validity of the law, as to what sort of a permit the commission is required to issue, and it is very forcibly urged on the part of counsel for the plaintiff in error that if he is entitled to a permit at all, that permission must be as broad as the law. In other words, that if they cannot discriminate among persons, neither can they discriminate among waters; that is, they cannot say: "You may fish here, but you must not fish there"; but that the law contemplates that if he satisfies the commissioners that he will not violate the law, he may fish in all marshes, estuaries, inlets or bays which are in any manner connected with Lake Erie.

## Sandusky County.

Speaking for myself, I am inclined to adopt this view, and I do not know that my associates are out of harmony with me in it. It is, perhaps, not essential that we should make this holding. It is entirely possible that these commissioners intended, in this permit, to include in their description of the waters to which it applied, all the waters which are contemplated by the statute. They have enumerated in the permit before me, various waters, "From the Maumee Bay to a point not above the east end of Presque Isle," below Toledo; and "Sandusky Bay at a point not above or west of a line drawn from the south point of Eagle Island, including Mud Creek to Horseshoe Island," etc. They have enumerated these various places in which they attempt to grant permission to fish for carp, and it is possible that they intend to include therein all the waters which they consider in any manner connected with Lake Erie. But whether that is so or not, it seems to me that having defined Mud Creek as far as, or to, Horseshoe Island, they included the particular water in which the defendant below, plaintiff in error here, was found fishing, or where his nets were found spread, as stated in the agreed statement of facts, and upon the basis of which agreed statement of facts he was convicted.

But it is said, upon the other side, that the waters in which his seine was placed were not embraced in these defined limits of the statute, so that even if the fish and game commissioners attempted to give him a permit to fish there, they had no power so to do, and he would be a violator of the law, unprotected by the written permit in his hands; and this brings us directly to the question whether the waters, as described in this agreed statement of facts, were such as come within the purview of this statute.

In a very full brief furnished us by counsel for plaintiff in error we are given definitions from different lexicons and other authorities of the terms "estuary," "inlet," "bay," and "creek." At the point where this seine was spread, the so-called Mud Creek was some 600 feet wide, and some six feet deep. The agreed statement of facts says that the waters at this point were on a level with Sandusky Bay, and with Lake Erie. It is agreed that the waters of the so-called Mud Creek rise and

Jackson  v. State.

fall as the waters of the lake rise and fall under the influence of winds from one direction or another; that a continued wind from the northeast will raise the waters of the creek as they rise in the marsh and along the shore of the lake; that winds more southerly would have a tendency to lower the waters as they lower them in the lake; and it has seemed to us, from a consideration of the entire water at this point, and its surroundings, its environment and its proximity to the lake, that it is just such water as the legislature had in mind in the somewhat sweeping terms of this enactment.  The purpose of this legislation was, of course, to destroy carp; carp being deemed not especially of value, and in some respects pernicious because of their destructiveness to other fish, and perhaps otherwise; and for this reason they were not deemed entitled to the protection of the law like fish of value.  The legislature, having this in mind, and knowing the extent to which carp were beginning to frequent the waters adjacent to Lake Erie, and connected therewith, passed this law excepting from the prohibitive operation of the law the fishing for this class of fish; and they made the law pretty broad.  It looks a little as if the legislature used all the terms that occurred to them at the time of the enactment to describe waters which would be so contiguous to Lake Erie that carp would readily go into Lake Erie from such waters, or from Lake Erie into them.  I am satisfied that the waters described in the agreed statement of facts are such as were contemplated by the legislature when it passed this section; that the fish and game commissioners could not limit the waters within which an applicant for permission to fish might set his seines, and that, having a permit to fish for carp, he was violating no law when he spread his nets where he did.

We think the justice of the peace, in convicting the defendant, committed an error, and the court of common pleas, in affirming the judgment did likewise; and our conclusion is that both judgments should be reversed and that the plaintiff in error is entitled to his discharge.

My associates now tell me that they are inclined to put their concurrence in this judgment upon the broad ground that whether or not the permit sought to limit the fishing to waters

above Horseshoe Island or to waters below it, still, as I have suggested, as my own view, the defendant had a right, if he was entitled to a permit at all, to fish anywhere in waters connected with the lake as described by the statute, and that Mud Creek, so-called, was a water so connected with the lake.

KINKADE, J., concurring:

He has a broad right, under the statute, to fish in the places designated in the statute; and these places embrace this place, and his right is supplemented by the permit. I merely don't want to say that I thought the commission that issued the permit was endeavoring to give him a permit at the point where he was fishing.

PARKER, J., concurring:

I am not quite certain of this, but I think that in all instances where they undertake to define the waters where the fishing may be done, they begin at the lower end or outlet near the lake, and say how far up you may go; and so, I think in this case they undertook to begin toward Lake Erie and say he might go up to Horseshoe Island, but not above it. I think that is the intention of the permit. We think that limitation may be disregarded; they had no right to circumscribe his permit.